**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RICHARD OBENAUF,

    Plaintiff,

v.                                                                    No. 10-CV-1179 WJ/DJS

ENHANCED RECOVERY CORPORATION,

    Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER GRANTING DEFAULT JUDGMENT

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment filed on February 28, 2011 (Doc. 6). Having heard testimony of Plaintiff as to the award of damages in this matter on March 29, 2011 and having considered the oral and written arguments of counsel, the Court finds that judgment shall be and hereby is granted and entered against Defendant Enhanced Recovery Corporation ("ERC").

## BACKGROUND

According to the allegations in the complaint (Doc. 1), which are deemed admitted as a consequence of the default, ERC is a debt-collection agency which has been telephoning Plaintiff at his home number repeatedly demanding a debt incurred in the name of "Roger." Plaintiff disclaims any knowledge of or liability for this debt. After the first telephone call, Plaintiff obtained ERC's contact information by means of internet research and sent ERC a letter via certified mail on November 8, 2010. The letter explained that Plaintiff was not "Roger" and requested that ERC cease communications with Plaintiff concerning this debt. ERC received this letter on November 22, 2010. However, ERC continued to call Plaintiff at his home number after

receiving this letter, without sending verification of the debt.

Plaintiff filed his complaint on December 9, 2010 (Doc. 1). The complaint brings three causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.; (2) violation of the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. § 57-12-2(D); and (3) tortious debt collection under state law. The Court has personal jurisdiction over ERC because the company is licensed as a collection agency by the New Mexico Financial Institutions Division.

According to Plaintiff's counsel, service of the complaint was made on ERC's designated service agent in New Mexico. Additionally, the service agent was personally served with the trial brief on damages (Doc. 12). However, ERC has not entered an appearance or filed an answer to the complaint. Plaintiff moved for default judgment on February 28, 2011 (Doc. 9). The Clerk of the Court entered default as to ERC on March 2, 2011 (Doc. 11).

A hearing was held in this case on March 29, 2011, during which the Court heard testimony from Plaintiff regarding his damages (Doc. 13). At the hearing, Plaintiff testified that ERC has continued to contact him via telephone regarding the disputed debt despite its notice of this lawsuit and its failure to appear to defend this case. The last telephone call was received on March 25, 2011—after service of the trial brief on damages and the Friday before the damages hearing.

Plaintiff requests $10,000 to $20,000 in emotional distress damages under the FDCPA, as well as $1000 in FDCPA statutory damages. Plaintiff also requests treble damages under the UPA and punitive damages under state tort law. Plaintiff further requests a permanent injunction to enjoin ERC from further telephoning Plaintiff, and costs and reasonable attorney's fees.

**DISCUSSION**

Once a defendant is found to be in default, a court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003). A court is not required to accept the plaintiff's legal conclusions or factual allegations when assessing damages and must ensure that there is a legal basis for the damages specified in the default judgment. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949). A court may set an evidentiary hearing to determine the amount of damages if such amount is not "for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(2). The Court has, accordingly, held an evidentiary hearing on damages.

**I.    Federal Law**

The Fair Debt Collection Practices Act prohibits a "debt collector" from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Specifically, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" violates the Act. *Id.* § 1692d(5); *see also Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1123-24 (D. Nev. 2008) (outlining FDCPA law).

Because of the default, ERC is deemed to have admitted violations of this Act as alleged in the complaint. The Court is further satisfied from the evidence presented by Plaintiff at the damages hearing that ERC has in fact engaged in prohibited conduct by repeatedly harassing Plaintiff with telephone calls to collect a debt after being informed that Plaintiff does not owe the debt.

### A.     Actual Damages

Section § 1692k(a)(1) allows a plaintiff to recover "any actual damage sustained" due to a debt collector's violation of the Act. Most courts have found that the Act allows courts to calculate the award of actual damages, including emotional distress and pain and suffering, under a relaxed standard of proof. That is, a plaintiff need not prove emotional distress with the specificity required under state law for intentional or negligent infliction of emotional distress claims. For instance, he need not have an expert witness on medical or causation issues, or show that his distress is "severe." *See, e.g.*, *Santacruz v. Standley & Assocs., LLC*, No. 10-cv-00623, 2011 WL 1043338, at *6 (D. Colo. Mar. 17, 2011); *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1314-16 (E.D. Cal. 2009); *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008). Further support for this proposition can be found from the Tenth Circuit. In a case arising under the Fair Credit Reporting Act, a statute with damage provisions virtually identical to those of the FDCPA, the court accepted a plaintiff's own testimony as sufficient in upholding $61,500 in actual damages for emotional distress. *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1371 (10th Cir. 1987). Even under the relaxed standard, Plaintiff is required to establish his emotional distress damages with reasonable detail and cannot rely on conclusory statements. *Kittle v. Accredited Collection Agency Inc.*, No. 07-cv-01716, 2010 WL 2650479, at *2 (D. Colo. June 30, 2010) (citing *Dill v. City of Edmond*, 155 F.3d 1193, 1209 (10th Cir. 1998)).

Plaintiff is a part-time instructor in the honors program at the University of New Mexico, and a candidate for a Ph.D. in medieval and renaissance English literature. At the hearing, Plaintiff testified that the phone calls are a "nuisance" that "take time from [his] day." With each ring of the phone, he would grow more upset at the harassment. He testified that his work –

research for his thesis or grading his students' papers – requires focus and with each call his focus would be lost. His wife testified that Plaintiff would lose an entire afternoon of work after a phone call. She testified that her husband is normally very "even tempered" but that the phone calls and the stress, time, and loss of focus associated with attempting to make them stop would evoke a strong reaction from him. Plaintiff explained that he feels an attachment to his home telephone number and believes he should not have to change his number in order to stop the harassing phone calls. Plaintiff concluded that he feels "insignificant" and "bullied" each time ERC calls him.

      The Court finds that this testimony is sufficient to support damages for emotional distress. However, the Court does not agree that Plaintiff is entitled to the full amount he requests. This conclusion is supported by a review of recent federal district court cases awarding damages for emotional distress as a result of similar conduct. Most awards fall well under the $10,000 to $20,000 range. *See, e.g.*, *Gilmore v. Account Mgmt, Inc.*, No. 08-CV-1388, 2009 WL 2848278, at *9 (N.D. Ga. Apr. 27, 2009) ($10,000 for stress and suffering which led to chest pains, and ultimately resulted in plaintiff having to undergo open heart surgery); *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp. 2d 96, 102 (D. Conn. 2005) ($5000 where plaintiff suffered anxiety, stress and frustration, was unnerved and irritated by the defendant's conduct, and was made to fear for his job and a possible promotion); *Berry v. Nat'l Fin. Sys., Inc.*, No. 08-CV-1388, 2009 WL 2843260, at *3 (W.D.N.Y. Aug. 27, 2009) ($3000 where plaintiff was "highly disturbed" and "disgusted," and lost sleep and felt fearful whenever he heard the telephone ring; his wife cried and lost her hair; and communications between them were rendered "difficult"); *Jenkins v. E. Asset Mgmt., LLC*, No. 08-CV-1032, 2009 WL 2488029, at *3 (E.D. Mo. Aug. 12, 2009) ($2000 for plaintiff who was "intimidated and disturbed," upset,

and "afraid" of "getting in trouble" at work, who "cried for several days," had "very bad headaches," "felt helpless," and was made to feel "worthless and ashamed").

Based on a review of the above, the Court does not find that Plaintiff's damages amount to $10,000. However, the Court does find that an award on the lower end of the range cited above would not be enough to compensate Plaintiff, as he has certainly suffered damages in terms of his lost research time as well as mental anguish. The interruption to Plaintiff's work, which is done at home and requires a great deal of focus, in addition to his mental stress and anxiety related to ERC's conduct, justifies an award somewhere in the middle of the range of the cases cited above. Therefore the Court will award $5000 in emotional distress damages.

### B. Statutory Damages

The FDCPA provides for an award of statutory damages up to $1000, in addition to any actual damages awarded. 15 U.S.C. § 1692k(a)(2)(A). These damages are exemplary damages and not calculated with an eye toward compensating the plaintiff. *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982). The factors to be considered are: "[t]he frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

These factors weigh heavily towards awarding the maximum amount allowed by statute. ERC has admitted the allegation in the complaint that its violation was willful. That ERC has continued to call to collect the debt *after* being notified of the lawsuit —without bothering to file an answer to the complaint—is rather egregious evidence of noncompliance. Compounding its noncompliance, ERC has persisted in its conduct of illegal and harassing phone calls after being served with the trial brief on damages in this case. The Court cannot help but reach the conclusion that ERC's behavior is most likely an intentional business/litigation strategy. The

Court therefore awards the full $1000 in exemplary damages under the FDCPA.

**II.     State Law**

Plaintiff has also alleged causes of action under the New Mexico Unfair Practices Act and under state tort law. By defaulting, ERC has admitted the facts which would form the bases for these causes of action. Under these respective causes of action, Plaintiff requests treble damages and punitive damages. However, Plaintiff has not argued, much less established, that actual damages under the UPA or state tort law are calculated the same way as awards under the FDCPA. To the contrary, it is apparent to the Court that they are not.

**A.     Tortious Debt Collection**

The New Mexico Supreme Court has recognized that collection activity knowingly aimed at the wrong person is a tortious invasion of that person's privacy. *Montgomery Ward v. Larragoite*, 467 P.2d 399 (N.M. 1970). Plaintiff seems to assume that because he has suffered actual damages as defined by the FDCPA, he may recover such damages under this tort and therefore punitive damages as allowed by state tort law. However, New Mexico courts have not indicated that damages for emotional distress may be recovered under the tort of wrongful debt collection.

As Plaintiff himself argues, "a plaintiff may recover [under the FDCPA] without proving the elements of the state law cause of action for intentional infliction of emotional distress." *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1054-55 (N.D. Cal. 2009). The obvious corollary to this proposition is that under his state law cause of action, the plaintiff cannot avail himself of this "relaxed" standard. Therefore, satisfactory proof of emotional distress damages under the "relaxed standard" of the FDCPA does not entitle a plaintiff to an award of emotional distress damages under state tort law.

Plaintiff does not explain what the state tort law standard for emotional distress is, or acknowledge that it is not identical to the federal standard under the FDCPA or federal common law. Plaintiff notes that *Carey v. Piphus*, 435 U.S. 247 (1978), established a federal standard of proof under which a plaintiff's own testimony, as long as it is specific and credible, supplies the requisite evidence for awarding damages for emotional distress that need not be "severe." Plaintiff then argues that New Mexico has adopted this standard by citing *Jacobs v. Meister*, 775 P.2d 254 (N.M. Ct. App. 1989). *Jacobs* was a case in New Mexico state court brought under 42 U.S.C. § 1983, and it is for that fact alone that *Jacobs* cited *Carey* and applied the federal standard of proof.[1] On the other hand, when a federal court takes supplemental jurisdiction of state law claims, it must apply *state* law to those claims—not federal law.

In conclusion, Plaintiff has not established how to determine emotional distress damages under state tort law. The New Mexico courts have not, to the Court's knowledge, provided any meaningful guidance on how to calculate emotional distress damages, nor have they laid out a standard of proof for emotional distress damages under state law.[2] In the absence of such guidance, the Court declines to import federal standards for Plaintiff's state law claims and will not award emotional distress damages under the UPA or tortious debt collection. Thus, without

---

[1] To the extent *Jacobs* discussed state law, it cited to the Restatement (Second) of Torts § 46 (1965), which, non-coincidentally, lays out the elements of IIED. *See* 775 P.2d at 262. *Jacobs* also cites a New Mexico case which awarded damages for emotional distress that was "acute." *See Sweitzer v. Sanchez*, 456 P.2d 882, 884 (N.M. Ct. App. 1969).

[2] Most of the guidance from New Mexico courts on emotional distress damages for state torts comes in the context of refusing to disturb a jury verdict, whatever the amount. *See, e.g.*, *Littell v. Allstate Ins. Co.*, 177 P.3d 1080, 1092-93 (N.M. Ct. App. 2007); *Seitzinger v. Trans-Lux Corp.*, 40 P.3d 1012, 1017-18 (N.M. Ct. App. 2001); *Weidler v. Big J Enters., Inc.*, 953 P.2d 1089, 1100 (N.M. Ct. App. 1997). Granted, these amounts generally exceed what Plaintiff requests here.

an award of emotional distress damages on his claim of tortious debt collection, Plaintiff cannot receive punitive damages under state tort law.

### B. Unfair Practices Act

The UPA covers the "collection of debts by a person in the regular course of the person's trade or commerce." N.M. Stat. Ann. § 57-12-2(D). "[S]tating that a transaction involves . . . obligations that it does not involve" is a violation of this statute. *Id.* § 57-12-2(D)(15). Thus, the UPA does present another avenue for Plaintiff to recover damages against ERC for calling him about a debt that he does not owe. However, the plain text of the UPA seems to exclude the sort of "soft" damages Plaintiff is requesting:

> Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater.

*Id.* § 57-12-10(B). "Loss of money or property" hardly encompasses emotional distress. Other jurisdictions have similarly interpreted their unfair trade practices statutes. *See, e.g.*, *Builes v. Kashinevsky*, 48 Conn. L. Rptr. 538 (Conn. Super. Ct. 2009) ("[C]ases on this issue [whether emotional distress or injury constitutes an ascertainable loss under the Connecticut Unfair Trade Practices Act] have determined that emotional distress or injury is not an 'ascertainable loss' capable of compensation."). Plaintiff does not cite to any case supporting an award of damages for emotional distress under the UPA, much less a case explaining how to calculate such damages and what evidence would be required.[3] The Court has not independently found any

---

[3] Plaintiff cites to case law that is, on balance, inapposite. *Hale v. Basin Motor Co.* based actual damages on economic loss, i.e., cost of repair. 795 P.2d 1006, 1010-11 (N.M. 1990). *Hale*'s stray reference to "frustration" on the part of consumers was a background comment on the enactment of the UPA, rather than an explanation of what type of damages are recoverable under the Act. *See also Pedroza v. Lomas Auto Mall, Inc.*, 625 F. Supp. 2d 1156, 1162 (D.N.M.

authority permitting the award requested, and will therefore not award actual damages for emotional distress to Plaintiff under the UPA.[4]

Plaintiff maintains he has suffered an "actual loss" under the UPA for the $5.54 he spent sending the letter to ERC via certified mail. Under section 57-12-10(B), the Court can award $100 in statutory damages when "actual loss" does not exceed this amount. This in itself does not present a double recovery issue because the award under the FDCPA encompasses only Plaintiff's suffering related to emotional distress. However, the Court will not treble this amount under section 57-12-10(B), which allows up to three times actual damages or $300, whichever is greater. A plaintiff must choose only one method of recovery as among treble damages under the UPA, punitive damages under state tort law, and statutory damages under § 1692k(a)(2)(A), because these all constitute exemplary damages which are meant to punish a defendant rather than compensate a plaintiff. *See Thomas v. Pierce, Hamilton, & Stern, Inc.*, 967 F. Supp. 507 (N.D. Ga. 1997) (award of statutory damages under FDCPA precludes award of punitive damages); *Hale v. Basin Motor Co.*, 795 P.2d 1006, 1012 (N.M. 1990) (plaintiff may not receive both treble damages under the UPA and punitive damages).

## III.     Injunction

---

2009) (finding that *Hale* did not hold that emotional distress damages are available under the UPA). Another opinion in the case of *Pedroza v. Lomas Auto Mall, Inc.* explained that a plaintiff may obtain $100 in statutory damages under the UPA without suffering any actual damages in the form of "loss of money or property." 663 F. Supp. 2d 1123, 1131-35 (D.N.M. 2009). This is not the same issue as whether a plaintiff must suffer "loss of money" before a court can award "soft" damages for emotional distress, the proposition for which Plaintiff cites the case.

[4] To the extent that unpublished decisions from this Court, including the undersigned, have found that such an award is justified under state law causes of action, they are not binding authority. Further, their persuasive value is limited where a memorandum opinion does not accompany the findings of fact and conclusions of law.

Plaintiff requests an order enjoining ERC from telephoning him at his home number regarding the debt "Roger" allegedly owes. The Court has the inherent equitable power to fashion a remedy to prohibit further violations of the law. *S.E.C. v. Barraco*, 438 F.2d 97, 98 (10th Cir. 1971) ("[T]raditionally in equity, where there is a right to issue a general injunction in a situation, the court has the power inherently to impose upon any persons, who have contributingly played a part in the doing or committing of the enjoinable action involved . . ., such reasonable and relevant individual restraint as may be necessary to enable the decree to accomplish its preventive purpose."). The Court finds that injunctive relief is appropriate in view of ERC's most recent harassing call to Plaintiff on March 25, 2011, after being served with a copy of Plaintiff's brief on damages and four days before the March 29, 2011 damages hearing.

## IV.     Attorney's Fees

The FDCPA provides that a prevailing party is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Plaintiff's counsel submitted an affidavit, Exhibit F admitted during the March 29 hearing, detailing his rate and the hours spent on this case. The Court hereby finds that $4549.75 in attorney's fees and costs is a reasonable amount given the time spent litigating this case at a reasonable hourly rate of $250.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Default Judgment filed on February 28, 2011 (Doc. 6) is GRANTED.

**IT IS FURTHER ORDERED THAT** Plaintiff shall have judgment against ERC for damages of $6000 pursuant to 15 U.S.C. § 1692k and $100 under N.M. Stat. Ann. § 57-12-10(B), as well as costs and attorneys fees of $4549.75, for a total judgment amount of $10,649.75. Post-judgment interest as provided by 28 U.S.C. § 1961 shall accrue on this amount

until paid in full.

**IT IS FINALLY ORDERED THAT** ERC, its employees, agents, attorneys, successor corporations, and any person who collects under the name "Enhanced Recovery Corporation" or "Enhanced Recovery Company" who has actual or constructive knowledge of this order is permanently enjoined from telephoning (505) 881-5245 with regard to a debt allegedly owed by any person other than Richard Obenauf, as long as this telephone number is assigned to Mr. Obenauf.

A Rule 58 Judgement and Order of Permanent Injunction shall issue contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE